UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------X
In re:                                          Chapter 11

     315 W 35TH ASSOCIATES LLC,           Case No.: 15-10877 (SMB)


                        Debtor.
------------------------------------------X

**NOTICE OF OBJECTIONS TO DEBTOR'S AMENDED DISCLOSURE STATEMENT**

**PLEASE TAKE NOTICE** that the MAZAL GROUP by and through BENJAMIN HERBST, hereby files his OBJECTIONS to the Amended Disclosure Statement filed on behalf of the Debtor, by Michael Sorotzkin ("MS") claiming to be, either a Member (in certain documents); and/or claiming to be a/the Manager (in certain documents); and/or claiming to be a Fifty (50%) per-centum Equity Holder (through another entity, he and/or others control) of the Debtor (the Michael Sorotzkin Disclosure Statement, "MSDS").

    I state everything herein from my personal knowledge, having been personally involved in this matter since the middle of 2009. As to those matters that having occurred prior thereto, I state same upon information and belief which I believe them all to be true, based on documentary evidence and statements made to me by the other parties involved.

    "MS" has had a connection to the Debtor by virtue of his efforts, back in 2006 through 2008 to solicit third-party investors to help Ari Chitrik ("AC"), the original One Hundred (100%) per-centum equity holder of the Debtor to finance the 'investors' portion for the acquisition and development of the subject property owned by the Debtor.

    Originally, back in 2006 and 2007, "MS" brought in sufficient funds from his collection of investors, which gave the "MS" Investor Group an approximate Forty Eight (48%) per-centum 'informal' shares or membership in the Debtor entity. All the "MS" Investor Group shares were held and controlled by "AC".

    At no time was "MS" or his entity ever listed as an 'official' shareholder or member of the Debtor.

    At no time was "MS" ever appointed in any 'official' capacity of the Debtor.

    At no time was "MS" ever listed as a member and/or signatory, in any capacity, in any of the official documents of the Debtor.

    Total control of the Debtor entity was, until the 'crash' of 2008, always vested with "AC" as the

This fact is reflected in the 'official' documents filed by the Debtor with the lending banks and with the IRS in the K2's.

In fact, "AC" obtained the Mortgages to finance the acquisition and development of the Debtor's Project, all in his sole name and in his capacity as the 'sole managing member' of the Debtor.

In fact, only "AC" was called upon by the lending banks and other lenders and creditors to give his personal guaranties to secure financing for the debtor entity. The name of "MS" or his entity never appeared in any official entity documents.

This entire arrangement was all altered by the new facts created by the 'crash' of 2008.

The Debtor was not able to meets its obligations without the infusion of additional 'capital', to keep the 'project' alive.

All calls by "AC" to "MS" to meet his obligations to answer for 'Capital Calls' and to provide additional funding and to meet his and his investors burden to shoulder the provisioning of additional and continued financing, were not met by "MS" and his investors group.

In fact, "AC" himself could not himself meet his burden and obligation to provide his share of additional and continuing financing.

This was when "AC" reached out to "HD" to provide the urgently needed financing on behalf of the entity, "AC" and the "MS" investor group.

Both "AC" and "MS" agreed to each give up fifteen (15%) per-centum of their respective membership shares of the Debtor to "HD" for his loans, advances to the Debtor.

In fact, "HD" required the personal guaranty of "AC" as additional security for the loans and advances to the Debtor entity and other loans and advances made by "HD" to other projects owned by "AC".

.

Furthermore; "HD" required that as an additional form of security, that "AC" pledge all of his interests in the Debtor and in all of the other entities and projects owned by "AC".

Thus; as of December 2008, 'HD' was the beneficial 'owner' of 30% of the debtor, while "AC" still held on to about 38% and "MS" held on to about 32%.

It was thus agreed that all future 'capital calls' for additional financing will be met by all 3 parties in the same percentage as their 'new ownership' interests.

Thus, despite this 'deal to change in the relative percentages of ownership, it was agreed that neither "HD" nor "MS" will assume any official position of the debtor entity. All power remained vested only with "AC", who remained and continued as the sole Managing Member of the Debtor.

Despite the infusion of cash by "HD"; neither "AC" nor "MS" could even meet, their 'reduced' burden to provide financing.

Thus "HD" elected to exercise his rights to seize the remaining 38% interest of "AC" in the Debtor (and all the other pledged entities).

By all pretenses, "MS" 'walked away' from the project, and refused to provide for any future 'capital calls', which was direly needed, in order to finance ever increasing professional and legal fees to deal with a possible 'work out' with the lenders and lienholders.

By the reckoning of "MS", the entire investment in the Debtor's project was a total loss and write off, with no hope of rehabilitation.

By all means; the refusal of "MS" to share the burden of any type of continued financing to save the property from foreclosure and other legal assaults, resulted in "MS" and his investors group diminishing their equitable interests in the Debtor, the property and the project.

"AC" was forced to retain the services of a various 'work out consultants and specialists' who were pledged (by the entity and guaranteed by "AC") to be repaid for their services.

Creditor Robert Verrone and his Iron Bound group obtained a 'judgment' against the Debtor (and against "AC") for the none payment for their professional services.

Creditor Benjamin Herbst ("BH") and his associates and 'work out group' obtained a 'judgment' (by confession) against the Debtor (and against "AC") for the none payment for their professional services.

In the course of retaining "BH" and his 'work-out group; "AC" gave the "BH" group all requisite authority and powers to act for and on behalf of the Debtor.

The first time that "MS" re-entered the picture as a party having an alleged remaining interest in the Debtor, was in 2014, when the 'market' for Manhattan real estate began to sky-rocket.

At the present, there is a fissure in the respective parties claiming ownership in and control of the Debtor and the property.

Accordingly, "MS" has unilaterally decided to file the bankruptcy proceeding without the participation of the other true and legal parties and officers of the Debtor.

As part of this unilateral filing, "MS" has cloaked himself with supposed requisite authority to make this filing and to present his 'abridged' version of the required 'DISCLOSURE STATEMENT'.

It is obvious that the "MS" Disclosure Statement is replete with misstatements; and most importantly replete with obvious self-serving omissions.

"MS" has packed the list of Creditors with the list of his Cleveland Ohio cronies who provided no service to the Debtor; and for sure they did not provide the service for the amounts that these 'cronies' are charging for their services; all incurred in the last 12 months.

While "MS" chooses to ignore and not to list those parties who provided true and productive services, which in essence 'saved the day' for the Debtor in order to survive the last 6 years, whereby services were rendered for over 6 years so that the Debtor realizes its redemption by the 'financial recovery' in general; and the Manhattan boom in particular.

"MS" and his investor group did not participate with "HD", "AC" and "BH" in their efforts; and did not contribute one dime for the last 6 years to save the Debtor and its assets.

Accordingly, "BH" (with the possible participation of "AC" and "HD") will be submitting and filing his (their) own version of the Debtor's Disclosure Statement, which will reflect the true realities of the events of the last 6 years, when "MS" and his investors group elected to just sit in the sidelines.

Let this serve as notice that for all the reasons set forth above; That Objections is hereby also made to the Plan of Reorganization as presented by the "MS" on behalf of the Debtor.

Dated:     Brooklyn, New York
           July 31, 2015

                              Yours etc.,


                              ____Benjamin Herbst_____
                               Benjamin Herbst
                               Creditor-in-Person
                               1705 51st Street
                               Brooklyn, New York 11204
                                 V. 917.776-8730
                                 F. 718.853-3424
                              Email: b.herbst.cfcp@gmail.com

```
TO ALL PARTIES ENTITLED TO SERVICE
BY and TO:      ECF Service List
```